[Civ. No. 18118.   First Dist., Div. Two.   Mar. 12, 1959.]

FRANCIS O. HENRICKSON et al., Appellants, v. PAUL L. SEBANC, Respondent.

Earl B. Myers for Appellants.

John E. Benson for Respondent.

KAUFMAN, P. J.—Plaintiffs, Francis O. and Hannah Henrickson (husband and wife) and their minor son, William O. Henrickson (by his guardian ad litem) appeal from a judgment in favor of the defendant, Paul L. Sebanc, denying them relief on a complaint for assault and battery. The case was tried without a jury. The trial court found that the defendant had not unjustly and without cause or provocation assaulted the plaintiffs; that the plaintiffs had not suffered any injury or damage as a proximate cause of defendant's acts; that defendant acted in self-defense as to the adult plaintiffs; that the medical expenses incurred by Hannah Henrickson and William Henrickson were not incurred by reason of any act of the defendant; and that the defendant was not entitled to any relief on his cross-complaint. No appeal is taken from the judgment on the cross-complaint.

On appeal, the plaintiffs contend: (1) that the evidence is insufficient to support the judgment; (2) that the findings of fact do not support the conclusions of law; (3) that the court erroneously restricted the cross-examination of the defendant by plaintiffs' counsel.

The facts, as revealed by the record, are as follows: The home of the plaintiffs at 1723-30th Avenue in San Francisco, is two houses away from the home of the defendant at 1731 30th Avenue. The defendant testified that about 6:30 p. m. on May 4, 1956, he was reading the paper after dinner when he heard a "terrific" explosion in the vicinity of the tunnel-like entrance to his home. The explosion caused his two younger daughters, who were playing in the basement, to scream and cry. Mr. Sebanc ran to the front window in time to see the "Henrickson boy" leave the area. Mrs. Sebanc had seen the Henrickson boy go beneath the balcony and then heard the firecracker go off.

Mr. Sebanc ran to the basement of his home to see if his daughters were injured. On finding that they were not, he went outside. He saw the plaintiff, William Henrickson (age 12) coming out of his garage, and accused him of exploding the firecracker, which the boy denied and placed the blame

on his two friends, David Welinsky and George Shoblo. Mrs. Betty Aronson, a neighbor who lived at 1727-30th Avenue, between the homes of the plaintiffs and defendant, saw David and George in the Henrickson backyard at the approximate time of the explosion, and heard one of the two remark: "Let's get out of here, Olie's [the nick-name of plaintiff William O. Henrickson] in trouble again." At the trial, David Welinsky denied making this remark, and testified that he lit the firecracker and George threw it.

After plaintiff William O. Henrickson repeatedly denied any connection with the firecracker, the defendant grabbed the boy by the arm and advised the boy that he was taking him to his parents. "Olie" then directed a torrent of filthy language at the defendant. The defendant grabbed the boy and shook him. The boy broke away, thus causing the defendant's open hand to come in contact with the boy's face. The defendant testified that this contact was not the result of a deliberate attempt to slap the boy. The boy ran to the top of his own stairway and the defendant ran after him, and held him at the top of the stairway. Plaintiffs Hannah and Francis Henrickson then came to the door. The defendant sought to explain what had transpired, but was unable to get a word in as Mrs. Henrickson was urging her husband to start a fight with the defendant. The defendant then left the area, and was followed by the three plaintiffs who were about five feet behind him.

On the front lawn of his home, plaintiff Francis Henrickson attacked and struck the defendant with his fist. The defendant returned the blow and the two men began to wrestle on the ground. While the two men were wrestling, Mrs. Henrickson kicked and scratched the defendant, and told her son to get a bat. The boy did so and struck the defendant a number of hard blows with the bat. Mrs. Henrickson and Olie denied that she told him to get a bat. However, defendant's testimony is corroborated by that of his wife and Mrs. Gleason, a neighbor living at 1735-30th Avenue.

The two men were separated by two young men. While the defendant sought to explain, Mrs. Henrickson again struck the defendant. A police officer who had been summoned by Mrs. Sebanc restrained her.

The plaintiff William O. Henrickson testified that on the day in question he was in the basement of his home, when his two friends came in. He warned them against using the firecracker they had. He heard the firecracker go off while he

was in the basement. His father came to the basement and then left to tell his mother. He then went outside. The defendant came toward him, called him a dirty name, and asked, "Who shot that firecracker?" After he denied shooting the firecracker, the defendant struck him in the face and held him firmly enough to cause black and blue marks on his arm. He kicked the defendant and ran up the stairs yelling for his parents. The defendant ran after him. The defendant grabbed him at the top of the stairs, and beat him on the neck and slugged him. When his father told the defendant to stop hitting him, the defendant hit his father and pulled his mother down the stairs.

There is further conflicting evidence as to the details of the altercation and the nature of the injuries received by the parties. Dr. Boston Day first saw Hannah Henrickson and William Henrickson *six* days after the incident occurred. Olie's left knee was X-rayed approximately two and one-half months later. Dr. Day testified to contusions, swelling discoloration and tenderness at various areas of the extremities, and a contusion of the left cheek. The only treatment prescribed by the doctor for Olie was "to rest and cut out his athletic activity for awhile until the bruises and contusions cleared up." Olie engaged in various athletic activity including football, baseball and bicycle riding. The evening of May 4, 1956, Olie went to his brother's house. The day following he thought he went to school, but being reminded it was a Saturday, he didn't know what he did.

Mrs. Henrickson testified to suffering bruises and abrasions and terrible bleeding on her legs because the defendant pulled her down five or six stairs. Olie corroborated his mother's testimony in this respect. Mrs. Eva Gleason, a neighbor, testified that Mrs. Henrickson was not bleeding immediately after the incident, and that a few days earlier Mrs. Henrickson had an injury to her legs. Two other neighbors, Mrs. Aronson and Mrs. Lundblade, corroborated Mrs. Gleason's testimony.

█ It is axiomatic that on appeal all conflicts in the evidence must be resolved in favor of the result reached below. (*Clewett* v. *Clewett*, 136 Cal.App.2d 913 [289 P.2d 512].)

█ There can be no question that the evidence amply supports the judgment. The court chose to believe defendant's testimony that "touching" of Olie's face by defendant's hand was not intentional and was caused by Olie's turning away.

█ There is no merit in plaintiffs' argument that their actions were justified by section 50 of the Civil Code or that

the defendant violated section 273a of the Penal Code and section 1708 of the Civil Code.

Plaintiffs' argument that the conclusions of law are not supported by the findings is based on Finding VI which is as follows:

"With respect to paragraph VI, an Amendment to the first cause of action of the plaintiff William O. Henrickson, it is true that said plaintiff procured medical aid and attention, including X-rays, and that the reasonable sum therefor is $52.50; it is not true that said medical aid and attention, including X-rays, were required by reason of an assault and battery committed upon the plaintiff by the defendant."

The latter portion of the finding refutes plaintiffs' argument.

Nor does the record reveal any abuse of discretion by the trial court in restricting the cross-examination of the defendant. The court stopped further cross-examination for the reason, "I think his statement will be the same." Plaintiffs' counsel did not suggest to the court that he wished to further examine the witness. ". . . Where a witness has been exhaustively cross-examined upon a particular point, it is not an abuse of discretion for the court to excuse him from further cross-examination, in the absence of any suggestion from the counsel conducting the examination that he wished to cross-examine the witness upon other points." (*Sandell* v. *Sherman,* 107 Cal. 391 [40 P. 493].)

We conclude that the judgment finds ample support in the record before us.

Judgment affirmed.

Dooling, J., and Draper, J., concurred.