[Civ. No. 23450.   Second Dist., Div. One.   Dec. 24, 1959.]

BRYANT E. MYERS et al., Respondents, v. JOHN J. MITCHELL et al., Appellants.

[Civ. No. 23451.   Second Dist., Div. One.   Dec. 24, 1959.]

JOHN J. MITCHELL et al., Appellants, v. BRYANT E. MYERS et al., Respondents.

Edward C. Maxwell, Robert B. Maxwell, Pier Gherini and Earl K. Stanton, for Appellants.

Elizabeth H. McCarthy for Respondents.

FOURT, J.—This is an appeal from judgments in favor of the respondents Myers awarding damages against appellants for breach of a written contract. The matters were heard before the trial court without a jury.

A résumé of the facts is as follows: In November of 1952, respondents Myers looked at a portion of appellants', Mitchells', ranch property in the Santa Ynez Valley. They were taken into the property over the South River Road, which leads easterly along the south bank of the Santa Ynez River from the County Road, known as Refugio Road. A Mr. Eiel, of the firm of Rowan and Company of Los Angeles, acting as Mitchells' agent, took the Myers in.

Subsequently, a contract was signed between the parties, dated January 26, 1953, which provided for the sale of approximately 800 acres of the Juan y Lolita ranch to the Myers.

The total purchase price was to be computed on the basis of the various types of land sold and the acreage of each. According to the contract, there were four classifications of land. Myers was to pay $400 per acre for land irrigable by gravity flow from existing concrete systems; $200 per acre for hay land; $100 per acre for range land; and the flat sum of $10,000 for river pasture land.

The contract of sale also provided for supplementary contracts, one for the maintenance of the roads and another for a certification of survey, from which the purchase price was to be computed. There were also provisions dealing with the building and maintenance of roads, easements and other matters.

The contract of sale was drawn by the appellants as was the contract for maintenance of roads. The Certification of Survey was drawn by the respondents.

Mr. Laurabee, of the firm of Laurabee and Waite, Surveyors, was engaged by appellants to make the required survey. The survey disclosed that there was a total of 174.27 acres of irrigable land; 196.30 acres of hay land; 294.75 acres of range land; and 213.15 acres of river wash land.

Because of the rocky nature of some of the irrigable land lying north of the river, it was agreed that a percentage of this irrigable land was to be downgraded to hay land according to a ratio established by the survey.

The "Certification of Juan y Lolita Ranch Survey" upon which the trial court relied, after the ratio was applied, stated in part as follows:

"11. In summation, there is a total of 142.08 Class III net tillable acres of farm land which is irrigable by gravity flow from present concrete irrigation pipe. There is a total of 228.49 Class V net tillable acres of hay land. There is a total of 294.76 acres of Class VI, range land." Of the "142.08 Class III net tillable acres of farm land which is irrigable by gravity flow from present concrete irrigation pipe," 97.58 acres lies south of the river and is not involved in the controversy. The dispute in part centers around a 76.69 acre parcel of land lying north of the river which was certified irrigable. It was to this parcel that the 58 percent—42 percent ratio adjustment was applied.

In Finding Number 15 the trial court found that Myers paid $400 per acre for the 76.69 acres. The court found that the 76.69 acres certified as irrigable was in fact hay land and awarded damages in the sum of $15,338. This sum being arrived at by multiplying the number of acres (76.69) times the price agreed upon for hay land ($200) per acre. The appellant insists that this was error.

It is well established that every intendment and presumption not contradicted by or inconsistent with the record on appeal must be indulged in favor of the orders and judgments of the trial court. (*Clewett* v. *Clewett*, 136 Cal.App.2d 913, 914 [289 P.2d 512]; *Estate of Moore*, 143 Cal.App.2d 64, 67 [300 P.2d 110]; *Goldberg* v. *Paramount Oil Co.*, 143 Cal. App.2d 215, 223 [300 P.2d 329].)

However, the trial court's findings of fact as to an issue tried by it must stand or fall on the evidence contained in the record. This case presents an anomalous situation. The trial court judicially determined as a fact something which cannot possibly be a fact.

Where there is only 142.08 acres of Class III land paid for and 97.58 acres of this was not involved in the controversy, then it must necessarily follow that the balance of 44.5 acres is all of the Class III land paid for by Myers at $400 per acre.

Predicated upon this factually impossible finding, the trial court erred in rendering judgment in the sum of $15,338.

None of the compilations of figures submitted by the parties total the same. The court adopted a measure of damages not advocated by the respondents and as a consequence neither party to the action introduced any evidence as to the theory adopted by the court.

After a careful examination of the record with its many

exhibits, we feel that it is unnecessary to deal with appellant's other contentions.

The judgments are reversed.

Wood, P. J., and Lillie, J., concurred.

Petitions for a rehearing were denied January 19, 1960, and respondents' petition for a hearing by the Supreme Court was denied February 17, 1960.